UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUBHASH PATEL, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| KONINKLIJKE PHILIPS N.V., FRANS VAN HOUTEN, and ABHIJIT BHATTACHARYA, | |
| Defendants. | |

Plaintiff Subhash Patel ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Koninklijke Philips N.V. ("Philips" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Philips securities between

February 25, 2020 and June 11, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.       Philips operates as a health technology company in North America, Greater China, and internationally.  The Company's products include, among others, Bi-Level Positive Airway Pressure ("Bi-Level PAP") and Continuous Positive Airway Pressure ("CPAP") devices, as well as mechanical ventilators.  Bi-Level PAP machines pump air under pressure into the airway of the lungs.  Bi-Level PAP machines have a higher pressure when users breathe in and lower pressure when users breathe out.  CPAP machines keep users' airway open by providing a continuous stream of air through a mask.  CPAP machines are devices prescribed to people with obstructive sleep apnea to keep their airways open during sleep.  Bi-Level PAP and CPAP machines use Polyester-based polyurethane (PE-PUR), a sound abatement foam, to reduce sound and vibration.

3.       Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Philips had deficient product manufacturing controls or procedures; (ii) as a result, the Company's Bi-Level PAP and CPAP devices and mechanical ventilators were manufactured using hazardous materials; (iii) accordingly, the Company's sales revenues from the foregoing products were unsustainable; (iv) the foregoing also subjected the Company to a substantial risk of a product recall, in addition to potential legal and/or regulatory action; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On June 14, 2021, Philips issued a voluntary recall of certain of its Bi-Level PAP and CPAP devices, as well as mechanical ventilators, after finding that the sound abatement foam used in the devices can degrade and become toxic, potentially causing cancer.

5.      On this news, Philips' stock price fell $2.25 per share, or 3.98%, to close at $54.25 per share on June 14, 2021.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to Philips' most recent Annual Report, as of December 31, 2020, there were 905,128,293 of the Company's common shares outstanding. Accordingly, there are presumably hundreds, if not thousands, of investors in Philips' securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

10.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

11.    Plaintiff, as set forth in the attached Certification, acquired Philips securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.    Defendant Philips is organized under the laws of the Netherlands with principal executive offices located at Breitner Center, Amstelplein 2, 1096 BC Amsterdam, the Netherlands. The Company's common shares trade in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "PHG".

13.    Defendant Frans van Houten ("Houten") has served as Philips' Chief Executive Officer and Chairman of the Board of Management and the Executive Committee at all relevant times.

14.    Defendant Abhijit Bhattacharya ("Bhattacharya") has served as Philips' Chief Financial Officer and a Member of the Board of Management and the Executive Committee at all relevant times.

15.    Defendants Houten and Bhattacharya are sometimes referred to herein as the "Individual Defendants."

16.    The Individual Defendants possessed the power and authority to control the contents of Philips' SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Philips' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Philips, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed

4

from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

17.     Philips and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Philips operates as a health technology company in North America, Greater China, and internationally.  The Company's products include, among others, Bi-Level PAP and CPAP devices, as well as mechanical ventilators.  Bi-Level PAP machines pump air under pressure into the airway of the lungs.  Bi-Level PAP machines have a higher pressure when users breathe in and lower pressure when users breathe out.  CPAP machines keep users' airway open by providing a continuous stream of air through a mask.  CPAP machines are devices prescribed to people with obstructive sleep apnea to keep their airways open during sleep.  Bi-Level PAP and CPAP machines use Polyester-based polyurethane (PE-PUR), a sound abatement foam, to reduce sound and vibration.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on February 25, 2020, when Philips filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 20-F").  For 2019, Defendants reported net income of $1.167 billion, or $1.26 per diluted share, on revenue of $19.481 billion.

20.     In a section containing a letter from Defendant Houten to Philips' shareholders, the 2019 20-F stated, in relevant part:

As we step up our transformation, we continue to be guided by our three-pronged strategic roadmap: *Better serve customers and improve quality; Boost growth in core business; Win with solutions along the health continuum*. We are making steady progress on our commitment to quality and operational excellence, as demonstrated by improving quality indicators, customer Net Promoter Scores and lower waste. The standardization and digitalization of internal processes, levering the Philips Integrated IT landscape, is leading to higher productivity and agility. Our continued focus on boosting growth in the core has delivered market share expansion in the Diagnosis & Treatment segment in particular. Revenues from solutions, long-term contracts and service business models – including new business models, such as software-as-a-service, pay-per-user and technology managed services – now stand at over one third of sales.

(Emphasis in original.)

21.     Further, in a section discussing the Company's strategy and business, the 2019 20-F stated, in relevant part:

With our global reach, deep clinical and technological insights and innovative strength, we are uniquely positioned in 'the last yard' to consumers and care providers, delivering:

- connected products and services supporting the health and well-being of people
- integrated modalities and clinical informatics to deliver precision diagnosis
- real-time guidance and smart devices for minimally invasive interventions
- connected products and services for chronic care.

In that same section, the 2019 20-F listed "[b]etter serve customers and improve quality" as one of the Company's "key strategic imperatives and value creation objectives," and stated that this imperative was driven by "[i]mprov[ing] customer experience, quality systems, operational excellence and productivity."

22.     In addition, in discussing how the Company creates value, the 2019 20-F listed manufacturing as one of the six forms of capital that Philips "draws upon for its business activities," stating, in relevant part, "[w]e apply Lean techniques to our manufacturing processes to produce high-quality products. We manage our supply chain in a responsible way."

23.     Moreover, in discussing the Company's Connected Care businesses, the 2019 20-F stated, in relevant part:

> Spanning the entire health continuum, the Connected Care businesses are tasked with improving patient outcomes, increasing efficiency and enhancing patient and caregiver satisfaction, thereby driving towards value-based care. Our solutions build on Philips' strength in verticals (monitoring & analytics, sleep & respiratory care, and therapeutic care) and horizontals (population health management and connected care informatics) to improve clinical and economic outcomes in all care settings, within and outside the hospital.
>
> Philips has a deep understanding of clinical care and the patient experience that, when coupled with our consultative approach, allows us to be an effective partner for transformation, both across the enterprise and at the level of the individual clinician. Philips delivers services that take the burden off hospital staff with optimized patient and data flow, predictive analytics, improved workflow, customized training and improved accessibility across our application landscape.
>
> ***
>
> - **Sleep & Respiratory Care**: Sleep offerings span from consumer sleep solutions, including those for disease-state sleep such as obstructive sleep apnea, to end-to-end solutions that encompass consumer engagement, diagnostics, people-centric therapy, cloud-based connected propositions and care management services. Respiratory offerings include COPD care management with digital and connected solutions; Hospital Respiratory Care (HRC) provides invasive and non-invasive ventilators for acute and sub-acute hospital environments; Home Respiratory Care supports the home care environment.

24.     Finally, the 2019 20-F touted Philips' quality and regulatory compliance with respect to the Company's product design and manufacturing, stating, in relevant part:

> Philips is committed to delivering the highest quality products, services and solutions compliant with all applicable laws and standards. We are investing substantially in embedding quality in our organizational culture. We will continue to raise the performance bar. Quality is an integral part of the evaluation of all levels of management. With consistency of purpose, top-down accountability, standardization, leveraging continuous improvement we aim to drive greater speed in the adoption of a quality mindset throughout the enterprise.
>
> ***

*Philips actively maintains Quality Systems globally that establish standards for its product design, manufacturing and distribution processes; these standards are in compliance with Food and Drug Administration (FDA)/International Organization for Standardization (ISO) requirements.* Our businesses are subject to compliance with regulatory pre-marketing and quality system requirements in every market we serve, and to specific requirements of local and national regulatory authorities including the US FDA, the European Medicines Agency (EMA), the National Medical Products Administration (NMPA) in China and comparable agencies in other countries. We also must comply with the European Union's Waste from Electrical and Electronic Equipment (WEEE), Restriction of Hazardous Substances (RoHS) and Registration, Evaluation, Authorization and Restriction of Chemicals (REACH), Energy-using Products (EuP) and Product Safety Regulations.

(Emphasis added).

25.    Appended to the 2019 20-F as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "[t]he [2019 20-F] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 and information contained in the [2019 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

26.    On April 14, 2020, Philips issued a press release entitled, "Philips details plans to increase its hospital ventilator production to 4,000 units/week by Q3 2020, and introduces its new Philips Respironics E30 ventilator with an immediate production of 15,000 units/week." The press release stated, in relevant part:

- Company introduces the Philips Respironics E30 ventilator, a versatile and easy-to-use ventilator to treat patients with respiratory insufficiency, designed for large scale production

\*\*\*

**Amsterdam, the Netherlands** – [Philips] today provided an update on its plans to double the production of its hospital ventilators by May 2020 and achieve a four-fold increase by the third quarter of 2020. This plan builds on Philips' initial production increase in the first three months of the year, which already enabled the supply of additional ventilators – that are critical for the treatment of COVID-19 patients – to hospitals in the most affected regions in China, southern Europe and

the US. To further address the huge global demand, Philips introduced its new Philips Respironics E30 ventilator, a versatile and easy-to-use non-invasive and invasive ventilator, which has been designed for large scale production.

"In line with Philips' mission, we are fully committed to helping as many healthcare providers as possible diagnose, treat and monitor the growing numbers of COVID-19 patients," said Frans van Houten, CEO of Royal Philips. "We have been mobilizing as a company to do so since January. The collaboration with our trusted partners Flex and Jabil will rapidly expand our hospital ventilator production capacity, and reinforce the supply chain to enable the ramp up to a production of 4,000 hospital ventilators per week by the third quarter. To complement this, our team has developed the new Philips Respironics E30 ventilator, which can be safely used when there is limited access to a fully featured critical care ventilator. The Philips Respironics E30 ventilator can deliver a range of treatment options, and we will quickly scale its production to 15,000 units per week in April."

*\*\**

**Introduction of Philips Respironics E30 for emergency use to fill the critical hospital ventilation shortage**
To further address the pressing need for critical care ventilators, Philips has been working closely with leading respiratory physicians and medical device regulators in the U.S. and other countries to develop a readily available ventilator that fills the critical hospital ventilation shortage.

Designed for large scale production by a team deeply experienced in respiratory care, the Philips Respironics E30 ventilator is optimized to treat patients with respiratory insufficiency. This easy-to-use ventilator offers quick set-up and simple operations allowing healthcare providers with a wide range of skill sets to treat and monitor patients. The Philips Respironics E30 can be used non-invasively, as well as invasively, offering the flexibility to adapt to the treatment needs of patients with COVID-19.

27.    On April 20, 2020, Philips issued a press release announcing the Company's Q1

2020 results.  The press release stated, in relevant part:

Comparable sales in the Connected Care businesses increased 7%, with double-digit growth in Sleep & Respiratory Care. Comparable order intake showed a very strong double-digit increase, driven by strong demand for patient monitors and hospital ventilators. The Adjusted EBITA margin increased to 9.8%, mainly due to growth and productivity.

*\*\**

9

- To further address the unprecedented demand for ventilators, Philips introduced the Philips Respironics E30 ventilator for emergency use when a fully featured critical care ventilator is not available. Philips is targeting a production of the new ventilator - which has been designed for large-scale production - of 15,000 units per week in April.

28.     That same day, Philips hosted an earnings call with investors and analysts to discuss the Company's Q1 2020 results (the "Q1 2020 Earnings Call").  During the scripted portion of the Q1 2020 Earnings Call, Defendant Houten stated, in relevant part:

> To further address the strong global demand in hospital ventilation, we are rolling out our new Philips Respironics E30 ventilator, a versatile and easy-to-use ventilator for emergency use where there is limited access to a fully featured critical care ventilator. The E30 has been designed for large-scale production and will scale to 15,000 units per week in April. With the strong demand to expand ICU bed capacity, we are also working to significantly increase the production volume of patient monitors.

29.     On July 20, 2020, Philips issued a press release announcing the Company's Q2 2020 results.  The press release stated, in relevant part:

> Comparable sales in the Connected Care businesses increased 14%, with double-digit growth in Sleep & Respiratory Care and mid- single-digit growth in Monitoring & Analytics. Comparable order intake more than doubled, driven by strong demand for patient monitors and hospital ventilators. The Adjusted EBITA margin increased to 17.8%, as additional investments to ramp up production were more than offset by operating leverage.

30.     That same day, Philips hosted an earnings call with investors and analysts to discuss the Company's Q2 2020 results (the "Q2 2020 Earnings Call").  During the scripted portion of the Q2 2020 Earnings Call, Defendant Bhattacharya stated, in relevant part, "[t]he sales of the Connected Care businesses grew a robust 14% in the second quarter. Sleep and respiratory care sales grew double-digit due to strong shipments of respiratory devices."

31.     On October 19, 2020, Philips issued a press release announcing the Company's Q3 2020 results.  The press release stated, in relevant part:

Comparable sales in the Connected Care businesses increased 42%, with double-digit growth in Monitoring & Analytics and Sleep & Respiratory Care. Excluding the partial termination of the ventilator contract with HHS, comparable order intake showed a double-digit increase, with strong growth across all businesses. The Adjusted EBITA margin increased to 27.1%, driven by higher volumes and operating leverage.

32.     That same day, Philips hosted an earnings call with investors and analysts to discuss the Company's Q3 2020 results (the "Q3 2020 Earnings Call").  During the scripted portion of the Q3 2020 Earnings Call, Defendant Houten stated, in relevant part, "Connected Care grew a very strong 42% in the quarter, driven by the high volume of shipments to fulfill the order for patient monitors and respiratory care."

33.     On November 4, 2020, Philips issued a press release entitled, "Philips expands its home care portfolio for COPD patients with first-of-its-kind non-invasive ventilator."  The press release stated, in relevant part:

- *Connected BiPAP A40 EFL ventilator is the first to help healthcare professionals screen, detect, and abolish expiratory flow limitation to reduce work of breathing in COPD patients with abnormally elevated blood carbon dioxide levels*
- *BiPAP A40 EFL leverages Philips leading connected solution platform to streamline diagnostic work through integration to Philips Alice sleep lab and home diagnostic systems*

[Philips] today announced the launch of Philips Ventilator BiPAP A40 EFL. With the introduction of this non-invasive ventilator, Philips extends its homecare solutions with a new ventilation therapy feature for chronic obstructive pulmonary disease (COPD) patients to breathe easier. Now, pulmonologists can identify COPD patients with expiratory flow limitation (EFL) and treat them with targeted therapy to reduce symptoms and increase their comfort while sleeping. The BiPAP A40 EFL ventilator continuously and optimally adjusts pressure based on patient needs.

BiPAP A40 EFL is the first and only non-invasive ventilator that allows health care professionals to automatically screen for and detect EFL, then provide optimal homecare therapy to dynamically and automatically abolish EFL [1]. This helps to reduce the patient's work of breathing. Built with Philips proprietary and clinically validated ExpiraFlow technology, BiPAP A40 EFL is designed to connect across

the care pathway – from diagnostic work to point of care therapy – to enable informed clinical decisions and optimize ventilation therapy, even remotely.

\*\*\*

"ExpiraFlow Technology represents a shift in the paradigm of ventilator COPD management toward more personalized therapy, which automatically optimizes ventilation to the individual needs of the patient," said Peter Calverley, Professor of Respiratory Medicine, School of Aging and Chronic Disease at the University of Liverpool. "By monitoring the presence of EFL on a breath-by-breath basis, the A40 EFL system can automatically adjust therapy pressures to ensure efficient lung emptying and better gas exchange. This new focus allows us to consider individual differences in lung mechanics and gas exchange when managing complex respiratory patients."

\*\*\*

The BiPAP A40 EFL leverages Philips leading connected solution platform to streamline diagnostic work through integration to Philips Alice sleep lab and home diagnostic systems. When prescribed and used in the home, the BiPAP A40 EFL connects to Philips Care Orchestrator cloud-based care management system. By making it easier to analyze and share information [4], this connectivity enables providers to make faster, more informed clinical decisions, and identify and prioritize patients who are in need of therapy intervention to better manage chronic respiratory patient care from hospital to home.

34.     On January 25, 2021, Philips issued a press release announcing the Company's Q4 and full year 2020 results.  The press release stated, in relevant part:

Comparable sales in the Connected Care businesses increased 24% in the quarter, with double-digit growth in Monitoring & Analytics and Sleep & Respiratory Care. Comparable order intake showed a 17% increase, with strong growth across all businesses. The Adjusted EBITA margin increased to 27.2%, due to operating leverage and productivity programs. For the full year, the Connected Care businesses delivered 22% comparable sales growth and an Adjusted EBITA margin of 21.5%.

\*\*\*

Philips' ongoing focus on innovation and partnerships resulted in the following key developments in the quarter and the year:

\*\*\*

12

- Expanding its range of patient-centric solutions for the home, Philips launched the BiPAP A40 EFL non-invasive ventilator. With this introduction, Philips is extending its respiratory care solutions with a new ventilation therapy feature to treat COPD patients with expiratory flow limitation (EFL) with targeted therapy to reduce symptoms and increase their comfort while sleeping.

35. That same day, Philips hosted an earnings call with investors and analysts to discuss the Company's Q4 2020 results (the "Q4 2020 Earnings Call"). During the scripted portion of the Q4 2020 Earnings Call, Defendant Houten stated, in relevant part:

[. . .] I am pleased that we have recorded comparable sales growth of 7% in Q4. Connected Care grew a very strong 24%, driven by the demand for patient monitors and respiratory care. Our Diagnosis & Treatment businesses delivered encouraging sequential improvement and returned to growth with a 1% comparable sales increase. Sales for Personal Health grew a solid 5%.

Comparable equipment order intake grew 7% in Q4, with double-digit growth in Connected Care and 3% growth in Diagnosis & Treatment. This was driven by strong demand for our patient monitors, hospital ventilators, radiology informatics, computed tomography, x-ray and ultrasound systems.

\*\*\*

Now I would like to provide some color on some of our initiatives to respond to customer needs and support healthcare professionals and consumers. In the quarter, we expanded our range of patient-centric solutions for the home with the launch of the BiPAP A40 non-invasive ventilator. With this introduction, we extend our respiratory care solutions with a new ventilation therapy feature to treat COPD patients with expiratory flow limitation, or EFL.

Our unique ExpiraFlow technology detects EFL more accurately and automatically optimizes ventilation to the individual needs of the patient. This enables more effective treatment of patients at home and ultimately avoids hospital readmissions.

Further, also during the scripted portion of the Q4 2020 Earnings Call, Defendant Bhattacharya stated, in relevant part, "[i]n the full year, comparable sales for Connected Care grew 22% with double-digit growth in both Monitoring & Analytics and Sleep & Respiratory Care. Order intake for Connected Care grew strong double digits in the full year."

36.     On February 23, 2021, Philips filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 20-F"). For 2020, Defendants reported net income of $1.187 billion, or $1.29 per diluted share, on revenue of $19.535 billion.

37.     In a section containing a letter from Defendant Houten to Philips' shareholders, the 2020 20-F stated, in relevant part:

> In 2020, Philips again demonstrated its relevance in bringing meaningful innovation to improve people's health and well-being, as we responded to the COVID-19 pandemic. As a company, we continue to focus on delivering against our triple duty of care – meeting critical customer needs, safeguarding the health and safety of our employees, and ensuring business continuity.
>
> ***
>
> The developments of the past year validate our strategy to innovate the provision of care along the health continuum – putting the patient at the center, improving diagnosis and treatment pathways, enabling the integration of care across care settings, and increasing care provider productivity. At the same time, we help consumers to live healthier lifestyles and to cope with chronic disease. Increasingly, we are able to connect home and hospital care through telehealth platforms. This approach is resonating more strongly than ever.
>
> Customers appreciate the comprehensive and strategic view we take of the future of health and healthcare. They want innovative solutions – smart combinations of systems, devices, informatics, data and services – that can help them deliver on the Quadruple Aim of better health outcomes, improved patient experience, improved staff experience, and lower cost of care. Given the learnings from COVID-19, they are especially keen to discover how we can support care outside the hospital.
>
> ***
>
> Our Connected Care businesses posted exceptional growth, fueled by COVID-19-related demand for our hospital ventilation and monitoring & analytics solutions.
>
> ***
>
> We aim to drive customer preference by getting even closer to our customers and consumers, making Philips easier to do business with, and further improving our quality, operational excellence and productivity. To do this, we are driving the digital transformation in every area of our business, leveraging our integrated IT

landscape – from the way we connect and engage with our customers and consumers to seamlessly connecting our solutions, e.g. to enable remote servicing and upgrades.

38.     Further, in discussing the Company's Connected Care businesses, the 2020 20-F

stated, in relevant part:

Spanning the entire health continuum, the Connected Care businesses help broaden the reach and deepen the impact of healthcare with solutions that leverage and unite devices, informatics, data and people across networks of care, to enable our customers to deliver on the Quadruple Aim – better health outcomes, improved patient experience, improved staff experience, and lower cost of care.

*** 

- **Sleep & Respiratory Care**: Philips' cloud-based sleep and respiratory patient management solutions enable the care of more than 10.5 million connected patients, driving adherence, reimbursement and remote patient management. From consumer sleep solutions, including those for disease-state sleep such as obstructive sleep apnea, to end-to-end solutions that encompass consumer engagement, diagnostics, people-centric therapy, cloud-based connected propositions and care management services. The COVID-19 crisis has put respiratory care at the top of the list for delivering critical and chronic care to patients. Respiratory offerings include COPD (Chronic Obstructive Pulmonary Disease) care management, with digital and connected solutions; Hospital Respiratory Care provides invasive and non-invasive ventilators for acute and sub-acute hospital environments; Home Respiratory Care supports chronic care management in the home.

In addition, the 2020 20-F contained substantive similar statements regarding the Company's

manufacturing capabilities, product design quality, and regulatory compliance as discussed, *supra*,

in ¶¶ 20-24.

39.     Appended to the 2020 20-F as exhibits were signed certifications pursuant to SOX

by the Individual Defendants, attesting that "[t]he [2020 20-F] fully complies with the

requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 and information

contained in the [2020 20-F] fairly presents, in all material respects, the financial condition and

results of operations of the Company."

40.     The statements referenced in ¶¶ 19-39 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Philips had deficient product manufacturing controls or procedures; (ii) as a result, the Company's Bi-Level PAP and CPAP devices and mechanical ventilators were manufactured using hazardous materials; (iii) accordingly, the Company's sales revenues from the foregoing products were unsustainable; (iv) the foregoing also subjected the Company to a substantial risk of a product recall, in addition to potential legal and/or regulatory action; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

41.     On June 14, 2021, Philips issued a voluntary recall of certain of its Bi-Level PAP and CPAP devices, as well as mechanical ventilators, after finding that the sound abatement foam used in the devices can degrade and become toxic, potentially causing cancer.  Specifically, in a press release announcing the recall, Philips stated, in relevant part:

**Amsterdam, the Netherlands** – Following the company update on April 26, 2021, [Philips] today provides an update on the recall notification* for specific Philips Bi-Level Positive Airway Pressure (Bi-Level PAP), Continuous Positive Airway Pressure (CPAP), and mechanical ventilator devices to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices. The majority of the affected devices within the advised 5-year service life are in the first-generation DreamStation product family.

To date, Philips has produced millions of Bi-Level PAP, CPAP and mechanical ventilator devices using the PE-PUR sound abatement foam. Despite a low complaint rate (0.03% in 2020), Philips determined based on testing that there are possible risks to users related to this type of foam. The risks include that the PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals. The foam degradation may be exacerbated by use of unapproved cleaning methods,

such as ozone,** and high heat and high humidity environments may also contribute to foam degradation.

Therefore, Philips has decided to voluntarily issue a recall notification* to inform patients and customers of potential impacts on patient health and clinical use related to this issue, as well as instructions on actions to be taken.

"We deeply regret any concern and inconvenience that patients using the affected devices will experience because of the proactive measures we are announcing today to ensure patient safety," said Frans van Houten, CEO of Royal Philips. "In consultation with the relevant regulatory agencies and in close collaboration with our customers and partners, we are working hard towards a resolution, which includes the deployment of the updated instructions for use and a comprehensive repair and replacement program for the affected devices. Patient safety is at the heart of everything we do at Philips."

42.     The recall notifications identified the recalled devices and their associated injury risks. First, the recall notification for "Trilogy 100, Trilogy 200, Garbin Plus, Aeris, LifeVent, BiPAP V30, and BiPAP A30/A40 Series Device Models" stated, in relevant part:

Philips Respironics is voluntarily recalling the below devices due to two (2) issues related to the polyester-based polyurethane (PE-PUR) sound abatement foam used in Philips Continuous and NonContinuous Ventilators: 1) PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and 2) the PE-PUR foam may off-gas certain chemicals. The foam degradation may be exacerbated by use of unapproved cleaning methods, such as ozone (see FDA safety communication on use of Ozone cleaners), and off-gassing may occur during operation.

These issues can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment. To date, Philips Respironics has received several complaints regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask). Philips also has received reports of headache, upper airway irritation, cough, chest pressure and sinus infection. The potential risks of particulate exposure include: Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects. The potential risks of chemical exposure due to off-gassing include: headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects. There have been no reports of death as a result of these issues.

| All Devices manufactured before 26 April 2021, All serial numbers | |
|---|---|
| Continuous Ventilator | Trilogy 100 |
| | Trilogy 200 |
| | Garbin Plus, Aeris, LifeVent |
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | A-Series BiPAP Hybrid A30 (not marketed in US) |
| | A-Series BiPAP V30 Auto |
| Continuous Ventilator, Non-life Supporting | A-Series BiPAP A40 |
| | A-Series BiPAP A30 |

43.     Second, the recall notification for "CPAP and Bi-Level PAP Devices" contained a substantively identical explanation of why the devices were being recalled, but added that "off-gassing may occur during operation *and may possibly continue throughout the device's useful life*." (Emphasis added.)   Further, the CPAP and Bi-Level PAP Devices recall notification identified the following devices as being recalled:

| All Devices manufactured before 26 April 2021, All serial numbers | |
|---|---|
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | E30 (Emergency Use Authorization) |
| Continuous Ventilator, Non-life Supporting | DreamStation ASV |
| | DreamStation ST, AVAPS |
| | SystemOne ASV4 |
| | C-Series ASV |
| | C-Series S/T and AVAPS |
| | OmniLab Advanced+ |
| Noncontinuous Ventilator | SystemOne (Q-Series) |
| | DreamStation |
| | DreamStation Go |
| | Dorma 400 |
| | Dorma 500 |
| | REMstar SE Auto |

44.     On this news, Philips' stock price fell $2.25 per share, or 3.98%, to close at $54.25 per share on June 14, 2021.

45.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Philips securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Philips securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Philips or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Philips;

- whether the Individual Defendants caused Philips to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Philips securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

52.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Philips securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Philips securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Philips securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Philips securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Philips securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Philips' finances and business prospects.

59.     By virtue of their positions at Philips, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Philips, the Individual Defendants had knowledge of the details of Philips' internal affairs.

61.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Philips. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Philips' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Philips securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Philips' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Philips securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62.     During the Class Period, Philips securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading

statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Philips securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Philips securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Philips securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

65.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.     During the Class Period, the Individual Defendants participated in the operation and management of Philips, and conducted and participated, directly and indirectly, in the conduct

of Philips' business affairs.  Because of their senior positions, they knew the adverse non-public information about Philips' misstatement of income and expenses and false financial statements.

67.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Philips' financial condition and results of operations, and to correct promptly any public statements issued by Philips which had become materially false or misleading.

68.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Philips disseminated in the marketplace during the Class Period concerning Philips' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Philips to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Philips within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Philips securities.

69.     Each of the Individual Defendants, therefore, acted as a controlling person of Philips.  By reason of their senior management positions and/or being directors of Philips, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Philips to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Philips and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Philips.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  August 16, 2021                     Respectfully submitted,

                                            POMERANTZ LLP

                                            */s/ Jeremy A. Lieberman*
                                            Jeremy A. Lieberman
                                            J. Alexander Hood II
                                            Thomas H. Przybylowski
                                            600 Third Avenue
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
                                            jalieberman@pomlaw.com
                                            ahood@pomlaw.com
                                            tprzybylowski@pomlaw.com

                                            *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I,  Subhash Patel                                    , make this declaration

pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private

Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Koninklijke Philips N.V. ("Philips" or the

"Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Philips securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Philips securities during the class period, including providing

testimony at deposition and trial, if necessary.  I understand that the Court has the authority to

select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Philips securities during the Class

Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is

signed, I have not served or sought to serve as a representative party on behalf of a class under the

federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of

the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or

approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.


Executed  August 8th 2021
                 **(Date)**


                                        *Subhash Patel*
                                        **(Signature)**


                                        Subhash  Patel
                                        **(Type or Print Name)**

**Koninklijke Philips N.V. (PHG)**                                                      **Patel, Subhash**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 11/30/2020 | 50 | $51.8342 |